**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 04-282 (JRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, ALTERNATIVELY, FOR NEW TRIAL** |
| MOHAMED KAMAL ELZAHABI, | |
| Defendant. | |

W. Anders Folk, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; John W. Van Lonkhuyzen, **U.S. DEPARTMENT OF JUSTICE**, Main Bldg., Room 2738, 10th & Constitution Avenue N.W., Washington D.C. 20530, for plaintiff.

Paul Engh, **ENGH LAW OFFICE**, 220 South Sixth Street, Suite 215, Minneapolis, MN 55402; Peter B. Wold and Aaron J. Morrison, **PETER B. WOLD, PA**, 247 Third Avenue South, Minneapolis, MN 55415, for defendant.

Following a three-day jury trial, defendant Mohamed Kamal Elzahabi ("Elzahabi") was convicted of three counts of possession of a fraudulent immigration document in violation of 18 U.S.C. § 1546(a). Elzahabi has now filed a motion for judgment of acquittal or, in the alternative, for a new trial. For the reasons explained below, the Court denies Elzahabi's motion.

# ANALYSIS

## I. STANDARDS OF REVIEW

Rule 29 of the Federal Rules of Criminal Procedure permits the Court to enter a judgment of acquittal if the evidence is insufficient to sustain the conviction. The standard for determining whether evidence is insufficient is very strict, requiring that there be "no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). In other words "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997).

Federal Rule of Criminal Procedure 33 permits the Court to grant a new trial "if the interests of justice so require." The Court has "broad discretion in ruling upon a motion for new trial," *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992), but a motion should be granted only "sparingly and with caution." *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).

## II. THE VALIDITY OF ELZAHABI'S MARRIAGE UNDER TEXAS LAW

Elzahabi was convicted of three counts of possessing and using a fraudulently obtained green card to obtain employment in Minnesota from 2001 until 2002. The prosecution's evidence included testimony of an FBI agent that Elzahabi admitted that the marriage was strictly a business relationship, as well as testimony from Elzahabi's

former spouse that she and Elzahabi never intended to live together as husband and wife, and that Elzahabi was to pay her $5,000 in exchange for the marriage.  Elzahabi now argues that the evidence was insufficient to establish that his 1984 marriage was invalid under Texas law, and therefore he could not have possessed a fraudulent green card on September 6, 2001, September 12, 2001, or February 7, 2002.  In effect, Elzahabi argues that the formal validity of his marriage under Texas law bars his conviction on the three charges of immigration fraud.

In support of his argument, Elzahabi cites to a split of authority among the courts of appeals regarding the Supreme Court decision in *Lutwak v. United States*, 344 U.S. 604 (1953).  The defendants in *Lutwak* had married World War II veterans in order to secure entry into the United States, representing themselves to immigration officials as alien spouses under the War Brides Act,[1] and then separating from their husbands immediately upon admission into the country.  The defendants were convicted of conspiracy to commit immigration fraud in violation of two statutes that were later merged into 18 U.S.C. § 1546.  *Id.* at 608.  On appeal to the Supreme Court, the defendants argued that their alleged conspiracy could not be unlawful because their marriages were legally valid.  *Id.* at 610.  The Court upheld the convictions, however, stating that "we do not believe that the validity of the marriages is material" to the underlying immigration fraud offense.  *Id.* at 611.  The Court explained that the

---

[1] The War Brides Act provided that "alien spouses or alien children of United States citizens serving in, or having an honorable discharge certificate from the armed forces of the United States during the Second World War shall . . . be admitted to the United States." 8 U.S.C. § 232 (1945).

defendants were not being prosecuted for "an offense against the marital relation," but for conspiracy to defraud the United States, and evidence showed that the defendants had concealed that they would separate immediately after entry into the United States. *Id.* Thus, the defendants violated § 1546 by stating they were married and by failing to explain the true nature of the marriage. *Id.* at 611-12.

Several courts of appeals have since issued conflicting opinions regarding the proper interpretation of *Lutwak*. In *United States v. Diogo*, 320 F.2d 898 (2d Cir. 1963), the Second Circuit considered an appeal of defendants convicted of making false statements under 18 U.S.C. § 1001 and immigration fraud under § 1546. The defendants in *Diogo* had entered into sham marriages with United States citizens, and later represented their marital status to immigration authorities in order to secure entry into the United States. *Id.* at 900-02. On appeal, the defendants argued that the technical validity of their marriages barred convictions for falsely representing their marital status under both § 1546 and § 1001. *Id.* at 903. The court agreed. Reversing the convictions, the court read *Lutwak* as holding that the formal validity of a marriage is immaterial only if defendants were charged with concealing material facts related to the marriage. *Id.* at 904. Because the defendants in *Diogo* were charged with falsely stating that they were married, however, the court found that the prosecution was required to prove those statements were in fact false, which required proof that the defendants were *not* legally married. *Id.* at 905. In a similar case, the Seventh Circuit adopted the *Diogo* court's interpretation of *Lutwak*, reversing defendants' convictions for making false statements

under § 1546 on grounds that the underlying marriages were valid. *United States v. Lozano*, 511 F.2d 1, 5 (7th Cir. 1975).

In *United States v. Yum*, however, the Fourth Circuit rejected the defendant's argument that his "actual and valid marriage . . . makes improbable any conspiracy to present to the INS documents containing false statements" under § 1546. 776 F.2d 490, 492 (4th Cir. 1985). The court stated that *Lutwak* "clearly held immaterial the validity of a marriage undertaken as a part of a conspiracy to defraud the United States." *Id.* The court went on to find that the *Lutwak* decision provided no sound basis for distinguishing between concealment and false representation under § 1546. *Id.* at 493 n.2.

Elzahabi argues that the Court should adopt the reasoning of the Second and Seventh Circuits and hold that, because the prosecution introduced no evidence that Elzahabi's marriage was invalid under Texas law, the jury could not have found that his petition for resident alien status was fraudulent. The Court is not persuaded, however, that the formal validity of Elzahabi's marriage under Texas law bars his conviction for immigration fraud under § 1546.

Section 1546(a) prohibits the possession or use of a green card "knowing it . . . to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained." 18 U.S.C. § 1546(a). Nothing in the statutory language suggests that § 1546 proscribes two distinct offenses, one for concealment and the other for false statements. Indeed, the Second Circuit appears to have superimposed such a distinction on § 1546 by reference to the statutory language of 18 U.S.C. § 1001, and to cases applying that statute. *See Diogo*, 320 F.2d at 902 (stating

that "[i]t is well established that [§ 1001] encompasses within its proscription two distinct offenses, concealment of a material fact and false representation"). Further, the prosecution in *Diogo* conceded that the only substantive offense charged against the defendants was "that of making false representations with respect to his marital status," such that the court's § 1001 analysis effectively subsumed the analysis of immigration fraud under § 1546. *See id.*

The prosecution in this case made no such concession, but maintained throughout the trial that Elzahabi entered into a sham marriage with the purpose of fraudulently obtaining a green card. Had the prosecution alleged merely that Elzahabi obtained a green card by falsely stating that he was validly married under Texas law, the reasoning of *Diogo* might be applicable here. In that case, the prosecution would be required to prove that the statement in question was false, which in turn would require the prosecution to show that Elzahabi was *not* validly married under Texas law. Here, however, the prosecution alleged that Elzahabi used a green card knowing that "the card was procured by means of any false claim or statement or to have been otherwise procured by fraud." Court's Jury Instr. Nos. 16, 21-23. The prosecution introduced evidence to show that, regardless of the formal validity of the underlying marriage, Elzahabi entered into a sham marriage to fraudulently secure a green card.[2] As such, the Court is not convinced that the validity of Elzahabi's marriage under Texas law precludes Elzahabi's convictions for immigration fraud under § 1546.

---

[2] For purposes of the immigration laws, a marriage is a "sham" if "if the bride and groom did not intend to establish a life together at the time they were married." *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir. 1975).

Indeed, even if the validity of Elzahabi's marriage were material to the immigration fraud charges, the Court finds that the evidence was sufficient to allow the jury to find that Elzahabi entered into a sham marriage in order to evade the immigration laws and obtain a green card.  An FBI agent testified at trial that Elzahabi admitted to entering into the marriage to obtain a green card, that he admitted that the marriage was strictly a business relationship, and that he was unable to recall the last name of his former spouse, Kathy Buckheit.  Elzahabi's statements were captured on a video recording of his interview with FBI agents, which was introduced into evidence by the prosecution and viewed by the jury.  Buckheit also testified that she and Elzahabi did not exchange rings, that they never lived together as husband and wife, and that, under the marriage arrangement, Elzahabi was to pay Buckheit $5,000 in exchange for the marriage.  Buckheit also testified that she went to Elzahabi's apartment on one occasion with some of her personal effects to make it appear to immigration officials that she was living with Elzahabi.  Elzahabi argued that he entered into the marriage in good faith, and that while he married Buckheit in part to secure a green card, his primary purpose in marrying was to establish a life together with Buckheit as husband and wife.

Based on the evidence presented at trial, the Court finds that a reasonable jury could find Elzahabi guilty beyond a reasonable doubt of entering into a sham marriage in order to evade the immigration laws and obtain a green card, in violation of § 1546.  The Court finds no basis that would entitle Elzahabi to acquittal or a new trial.  Elzahabi's motion is therefore denied.

## ORDER

Based on the foregoing records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant Mohamed Kamal Elzahabi's Motion for New Trial [Docket No. 128] is **DENIED**.

DATED:   October 23, 2007               s/ John R. Tunheim    _
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                United States District Judge