UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
04-282 (JRT/FLN)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **POSITION OF THE UNITED STATES** |
| v. | ) | **WITH RESPECT TO SENTENCING** |
| | ) | |
| MOHAMAD KAMAL ELZAHABI, | ) | |
| a/k/a "Abu Kamal al Lubnani, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys Frank J. McGill, Jr., Acting United States Attorney for the District of Minnesota, Assistant United States Attorney W. Anders Folk, and Trial Attorney John W. Van Lonkhuyzen, hereby submits this Position with Respect to Sentencing in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines Manual ("Guidelines) § 6A1.2, in anticipation of the sentencing hearing in this case scheduled for March 14, 2008.  While the United States does not dispute the basic advisory Guidelines calculations in the presentence investigation report, the United States contends that there are aggravating circumstances of a kind and to a degree not adequately taken into account in the Guidelines, see § 5K2.0, and that consideration of the factors enumerated in 18 U.S.C. § 3553(a) shows that a sentence substantially above the advisory Guidelines range is necessary and appropriate.  The United States requests that this Court impose a sentence of at least 46 months

imprisonment, which is a sentence approximately equivalent to the time that the defendant has served in custody.

## Factual Background

The defendant stands before the Court convicted of three counts of knowing possession and use of fraudulently obtained alien registration receipt card, in violation of 18 U.S.C. § 1546. As the evidence at trial established, the defendant entered the United States in 1984, paid a U.S. citizen to enter a sham marriage in 1984 in order for him evade the immigration laws, obtained his alien registration card (or "green card") and status as a lawful permanent resident in 1986 based on that sham marriage, and on three occasions in 2001 and 2002 used that fraudulently-obtained green card to apply for employment. But as this Court is well aware, the facts surrounding the defendant's procurement and use of the green card involves more than simply entering into a fraudulent marriage and using the green card obtained by that marriage for the purpose of obtaining employment. While the heartland of the Guidelines might contemplate a sentencing range of 0-6 months for an ordinary alien who had used a fraudulently obtained green card to apply for jobs, such a sentence would be wholly inappropriate for this defendant, who is anything but ordinary.

As this Court knows, the defendant has admitted to serious acts of terrorism and violence, and has been identified both by his own admission and by third-party sources as a terrorist trainer and

2

well-known sniper. Beginning on April 16, 2004, Elzahabi participated in 17 days of voluntary debriefings with special agents of the FBI. In the course of his statements to the FBI, Elzahabi admitted to two trips to Afghanistan, to serving as a sniper against the Russians and providing training at Khalden Camp, to knowing and working with Abu Zubeydah and Abu Musab al Zarqawi, to providing training to Bassam Kanj's group and other fighters in Lebanon, and to traveling to Chechnya and serving as a sniper there, where he admitted to shooting at least one Russian soldier. It is also believed that he functioned as a repacker and reshipper to Abdullah Al-Malki, an al Qaeda procurement official, when living in New York in approximately 1995-96, and that he assisted Ri'ad Hijazi, now convicted and imprisoned in Jordan for his role in the failed Millennium plot to destroy tourist sites and hotels in the Middle East, to obtain a driver's license, when they both lived in Massachusetts in 1997.[1]

During the course of the FBI interview, Elzahabi admitted fighting with and training armed Islamic groups in Afghanistan, training the armed Islamic group the Al-Dinnayyah Rebels in

---

[1] Elzahabi's denials of these two activities were the bases of the two counts of making false statements to the FBI, in violation of 18 U.S.C. § 1001, that remain pending. Although the United States will dismiss these two counts upon defendant's sentencing on the three Section 1546 counts, the government still believes that the defendant committed these underlying acts, and that they may and should be considered by the Court in sentencing.

Lebanon, and fighting in Chechnya. Specifically, Elzahabi admitted that, in early 2000, he delivered nearly $300,000 to the leaders of a Chechen terrorist group and that he fought with them as a sniper against Russian forces. Elzahabi admitted having personal contact with both Ibn Khattab and Shamil Besayev, leaders of the Chechen liberation movement, who have committed numerous acts of terrorism in and around Russia. Finally, Elzahabi admitted taking part in multiple ambushes of Russian soldiers and, in his role as a sniper, shooting and killing specific Russian soldiers.

In addition, as set out in an affidavit a copy of which has been submitted to probation, Elzahabi has been identified by an individual associated with al Qaeda (CS-1) as a very well-known sniper who assisted in the teaching of sniper skills at an assassination course run at an al Qaeda training camp located in Afghanistan. Another individual (CS-2), also associated with al Qaeda, identified Elzahabi as a jihad fighter in Afghanistan during 1990-1993, who suffered serious wounds in combat. This individual understood that Elzahabi had also been in combat in Lebanon's civil war. (The identities of these sources remains classified.) In short, Elzahabi has a long history of activities as a *jihadi* and terrorist.

Examination of the facts of this twenty-year career as a *jihadi* and terrorist makes plain that the defendant was using his status as a lawful permanent resident of the United States for

safe-haven.  Elzahabi entered the United States in 1984, ostensibly as a student, was married later that year, obtained his lawful permanent residence status in 1986, and was divorced in 1988. Having obtained his LPR status by fraud, he left the United States and returned on multiple occasions.  He left in approximately 1988, and went to Afghanistan.  There, he acted as a sniper and trainer. When seriously wounded, he returned to the United States to seek medical treatment.  Again, he left the United States in 1998, and traveled to Lebanon and thereafter to Chechnya.  In Lebanon, he trained rebels who engaged in an uprising against the lawful government of that country.  In Chechnya, he admitted that he carried funds to terrorist commanders, that he served as a sniper, and that in fact he shot and killed particular Russian soldiers. Afterwards, in Summer 2001, he returned to the United States in Minnesota.

The defendant also used his fraudulently-obtained status to associate with and assist terrorists in the United States.  In approximately 1995-96, while living in New York, Elzahabi functioned as a repacker and reshipper to Abdullah Al-Malki, an al Qaeda procurement official located outside the United States.  In addition, documents establish that he assisted Ri'ad Hijazi, now convicted and imprisoned in Jordan, for his role in the failed Millennium plot to destroy tourist sites and hotels in the Middle

East, to obtain a driver's license, when they both lived in Massachusetts in 1997.

## **Determination of a Reasonable Sentence for Elzahabi**

The Eighth Circuit has adopted a three-step analysis applicable to the exercise of a sentencing court's discretion. See United States v. Garnica, 477 F.3d 628, 631 (8th Cir. 2007). First, the sentencing court calculates an advisory guidelines sentence. Id. Then the sentencing court considers whether any traditional guidelines departures are appropriate, and adjusts the initial advisory range accordingly. Id. Finally, the sentencing court considers § 3553 sentencing factors to determine whether to impose a non-guidelines sentence. Id. Both the second and third steps are necessary because the district court has discretion "to vary from the advisory guidelines even where a departure would not be appropriate." United States v. Donnelly, 475 F.3d 946, 956 (8th Cir. 2007). Application of these steps, and consideration of the factors set out in Section 3553(a) shows that a sentence of 46 months is not only reasonable, but necessary and appropriate.

## 1.    **The Advisory Guidelines Sentence.**

Probation has calculated an advisory guidelines sentencing range of 0-6 months. First, probation applies Guidelines § 2L2.2, resulting in a base offense level of 8. Probation groups the three counts of conviction as involving substantially the same harm, in particular, because the three counts involve the same victim and

6

two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. Guidelines § 3D1.2(b). Because the defendant pled not guilty, there is no reduction for acceptance of responsibility. Defendant's criminal history category is calculated at I, yielding an advisory Guidelines range of 0-6 months. The United States agrees with these basic calculations.

However, as discussed below, the United States contends that the defendant committed these offenses to further his terrorist career, and that therefore there are substantial arguments that the terrorism enhancement of Guidelines § 3A1.4 applies, and that if it does not, a upward departure or variance is warranted and appropriate.

## 2.   Upward and Lateral Departures Are Warranted In This Case.

There are in this case "aggravating ... circumstance[s] ... of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described" by the advisory Guidelines calculation above. Guidelines § 5K2.0.

There are at least two grounds for an upward departure in this case. First, defendant's criminal history category as calculated under the Guidelines seriously under-represents the activities in

which the defendant has been involved in the past.  See § 4A1.3.
Second, defendant has a long career as an admitted terrorist.
Regardless of whether the material support guideline, set forth in
Guidelines § 2M5.3, or the terrorist enhancement, set forth in
Guidelines § 3A1.4, apply directly to the defendant's present
convictions, both show that the advisory Guidelines range
contemplated under § 2L2.2 is far too low in this case, and provide
by analogy grounds for a reasonable upward departure.

     First, the defendant has engaged in a series of actions of a
criminal nature that are not reflected in his criminal history.
Guidelines § 4A1.3(a)(1) provides that where "reliable information
indicates that the defendant's criminal history category
substantially under-represents the seriousness of the defendant's
criminal history or the likelihood that the defendant will commit
other crimes" an upward departure may be warranted.  Prior similar
adult criminal conduct not resulting in a criminal conviction may
be used in considering such a departure.  § 4A1.3(a)(2)(E).  The
defendant's admissions, and other reliable information before the
Court indicate that an upward departure is warranted for both these
reasons.  Using just his more recent admissions, the defendant has:
(1) smuggled $300,000 to rebels in Chechnya, proving material
support to them; (2) fought as a sniper in Chechnya, and by his own
account killed at least one Russian soldier, thus committing
murder; (3) provided military training to rebels in Lebanon trying

to overthrow that country's lawful government, again providing material support.  These are all serious criminal actions not reflected on defendant's criminal history category.  If he had been convicted of these actions, he would almost certainly have been sentenced to terms greater than one year and one month.  Therefore, the government submits that giving the defendant three criminal history points for each of these actions is appropriate.  Nine points would place the defendant in Category IV.  But not only has the defendant committed these acts, which are not reflected in his criminal record, these acts and his history show that he is extremely likely to resume these activities if not sentenced appropriately.  He did not cease his terrorist activities when he was wounded.  Instead, he used his fraudulently-obtained lawful permanent resident status to return to the United States for medical treatment, and later, after he recovered, went abroad again to resume his violent ways.  The likelihood he will commit further crimes is extraordinarily high.

Moreover, these are all acts of terrorism, and if the Court were to apply the terrorism enhancement, Section 3A1.4, the Guidelines would require that defendant's criminal history be set at Category VI.  Therefore, the government submits that a lateral departure or variance in defendant's criminal history is appropriate.  The government suggests that this Court sentence the

9

defendant as if he had a criminal history of at least Category III or IV.

Second, the government submits that the Court should also depart upward to adequately reflect the defendant's criminal actions, history, and characteristics. If this Court is reluctant to impose the terrorism enhancement, under § 3A1.4, which is arguably applicable here, the Court should use that enhancement as the basis for fashioning an upward departure. Section 3A1.4 provides that the base offense level be increased by 12, to a minimum of level 32, and to increase the defendant's criminal history to Category VI. Such an increase results in an advisory Guidelines range of 210-262 months, which would be within the available statutory maximum here. The Court may feel that this case is not and does not involve a "federal crime of terrorism", strictly speaking, and so the enhancement should not apply. However, application note 2 to the enhancement provides that an offense that involves "harboring ... a terrorist" who commits a federal crime of terrorism "shall be considered" to have involved a federal crime of terrorism. The instant offense clearly and certainly involved "harboring" a terrorist. The defendant used the United States for safe-haven between his terrorist expeditions. He sought refuge and safe-harbor here. That was only possible because of his fraudulently-obtained lawful permanent residence status. Further, application note 4 provides explicitly that an upward

departure may be warranted when the underlying terrorism offenses are not, strictly speaking, federal crimes of terrorism. This is the case either if they are not included on the statutory list of 18 U.S.C. § 2332b(g)(5),[2] or because they were intended to intimidate a civilian population rather than a government. The government submits that if the Court does not impose the terrorism enhancement, is should fashion an upward departure based on that provision.

Therefore, the government requests that the Court depart upward twelve levels, the amount set forth in the enhancement (but not to 32). That would result in a final offense level of 20. That is eminently reasonable given defendant's offense conduct and terrorist connections and acts. Note also, that the material support guideline (§ 2M5.3) would provide an offense level 26, more than is recommended here. The United States further requests that the Court depart laterally from criminal history category I to criminal history category III or IV. At criminal history category III, and offense level 20, this provides a guideline range of 41-51 months, and at criminal history category IV, a range of 51-63 months. The Government requests a sentence of at least the middle of the lower of these ranges -- 46 months, which the United States

---

[2]    Section 1546 is not among the crimes listed as federal crimes of terrorism in 18 U.S.C. 2332b(g)(5). However, sections 2339 (relating to harboring terrorists), 2339A (relating to providing material support to terrorists), and 2339B (relating to providing material support to terrorist organizations) are listed.

11

submits is reasonable and appropriate for this defendant in this case.

**3.    <u>Section 3553(a) Factors Warrant an Above-Guidelines Sentence.</u>**

Although the sentencing court must first correctly calculate and consider the applicable Sentencing Guidelines as its benchmark, "[t]he Guidelines are not the only consideration." <u>Gall v. United States</u>, — U.S. —, 128 S. Ct. 586, 596 (2007). The court must also examine the factors under 18 U.S.C. § 3553(a) to determine whether they compel a greater or lesser sentence. <u>Id.</u> This Court has adopted a three-step analysis applicable to this exercise of a sentencing court's discretion. <u>See</u> <u>United States v. Garnica</u>, 477 F.3d 628, 631 (8th Cir. 2007). First, the sentencing court calculates an advisory guidelines sentence. <u>Id.</u> Then the sentencing court considers whether any traditional guidelines departures are appropriate, and adjusts the initial advisory range accordingly. <u>Id.</u> Finally, the sentencing court considers the Title 18, United States Code, Section 3553(a) sentencing factors to determine whether to impose a non-guidelines sentence. <u>Id.</u>

With respect to the reasonableness of a sentence outside the guidelines range, the Eighth Circuit reviews whether the sentencing court "failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only the appropriate factors but committed a clear error of judgment by imposing a sentence

outside of the guidelines range dictated by the facts of the case."
Donnelly, 475 F.3d at 955.

In Gall, the Supreme Court instructed that the sentencing
court, in considering the factors under § 3553(a), should not
presume that a sentence within the Guidelines range is reasonable,
just as the sentencing court should not presume that a sentence
outside of the Guidelines range is unreasonable.  Gall, 128 S. Ct.
at 595, 596.  Rather, the sentencing court should apply § 3553(a)
to the specific facts of each case to make an "individualized
assessment."  Id. at 597.

Section 3553(a) provides in pertinent part as follows:

(a) Factors to be considered in imposing a sentence. –
The court shall impose a sentence sufficient, but not
greater than necessary, to comply with the purposes set
forth in paragraph (2) of this subsection.  The court,
in determining the particular sentence to be imposed,
shall consider–

    (1)  the nature and circumstances of the offense
and the history and characteristics of the defendant;

    (2)  the need for the sentence imposed–

        (A) to reflect the seriousness of the
offense, to promote respect for the law, and to provide
just punishment for the offense;

        (B) to afford adequate deterrence to criminal
conduct;

        (C) to protect the public from further crimes
of the defendant; and

        (D) to provide the defendant with needed
educational or vocational training, medical care, or
other correctional treatment in the most effective
manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

. . . .

(5)   any pertinent policy statement . . . issued by the Sentencing Commission . . . .

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a).

Defendant Elzahabi's admissions and other information before this Court, make clear that a sentence within the contemplated guideline range is inadequate to address the sentencing factors set out in Section 3553(a).

Under § 3553(a)(1), the Court should consider the "history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  See United States v. Betts, 509 F.3d 441, 444 (8th Cir. 2007).  As noted above, the defendant's history and characteristics illustrate a life dedicated to violence and the overthrow of governments.  He utilized his status as a lawful permanent resident in the United States to provide a safe haven from which he could at his convenience wage jihad against Russians in Afghanistan and Chechnya and to assist others in the overthrow of the Lebanese government. The defendant's entire adult life as a lawful permanent resident of

14

the United States has been spent either participating in violent activity, recovering from wounds sustained as a result of conducting violent activities, or training others in the art and science of violence.

The Guideline range contemplated by probation merely punishes the ordinary offense of using a fraudulently-obtained green card to apply for a job. The violative factor is the illegal alien's fraudulently-obtained immigration status. While that is accounted for in the applicable guidelines, the true use to which the defendant put that fraudulently-obtained status is not.

A substantially longer sentence also is required to afford adequate deterrence. Under § 3553(a)(2)(B), this factor includes deterring others from committing similar conduct. United States v. Garnette, 474 F.3d 1057, 1062 (8th Cir. 2007). The sentence should reflect that it is wholly unacceptable to obtain lawful permanent resident status by fraud, and then turn around and use it to make the Untied States one's base for terrorist excursions throughout the world.

For those reasons, the Government respectfully submits that under § 3553(a), the Court should vary upwardly from the advisory Guidelines calculation.

15

## Conclusion

For the reasons set forth above, the United States submits that a consideration of the factors enumerated in 18 U.S.C. § 3553(a) shows that a sentence substantially above the advisory Guidelines range is necessary and appropriate in this case, and requests that this Court impose a sentence of, at a minimum, 46 months imprisonment, which is at the mid-point of the minimum warranted upward departure range.

Respectfully submitted,

Dated:  March 14, 2008        FRANK J. MAGILL, JR.
                               Acting United States Attorney

                               *s/W. Anders Folk*

                               BY: W. ANDERS FOLK
                               Assistant U.S. Attorney
                               Attorney ID No. 311388

                               JOHN W. VAN LONKHUYZEN
                               Trial Attorney
                               U.S. Dept. of Justice